**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 19-cv-0685-WJM-NRN

WILLIAM TEDROW,

    Plaintiff,

v.

SENTRY INSURANCE a MUTUAL COMPANY,

    Defendant.

---

**ORDER DENYING PLAINTIFF'S MOTION FOR
DETERMINATION OF ENFORCEABILITY OF CONTRACT PROVISION**

---

In this insurance dispute, Plaintiff William Tedrow ("Tedrow") sues Sentry Insurance ("Sentry") for (1) breach of insurance contract; (2) common-law bad faith breach of an insurance contract; and (3) unreasonable delay or denial of insurance benefits in violation of Colorado Revised Statutes §§ 10-3-1115 and -1116. (ECF No. 6.)

Currently before the Court is Tedrow's Motion for Determination of Enforceability of Contract Provision (the "Motion"; ECF No. 17). For the reasons explained below, Tedrow's Motion is denied.

### I. FACTUAL & PROCEDURAL BACKGROUND

Tedrow was insured by Sentry under a Personal Auto Policy ("Auto Policy"; ECF No. 17-1). (¶ 5.)[1] On December 12, 2016, Tedrow was waiting to make a right turn at

---

[1] All "¶" citations, without more, are to the Complaint (ECF No. 6).

an intersection when he was rear-ended by another vehicle. (¶ 6.) Tedrow sustained injuries as a result of the collision and allegedly incurred more than $47,000 in accident related medical expenses. (¶¶ 5, 11.) In early 2018, Tedrow was paid the policy limit of $25,000 by the driver-at-fault's liability carrier. (¶¶ 9–11.)

On April 26, 2018, Tedrow tendered his underinsured ("UIM") claim to Sentry, seeking recovery of all damages he incurred in excess of the driver-at-fault's $25,000 policy-limit settlement. (¶ 11.) Sentry subsequently assigned Quynh Nguyen to evaluate and administer Tedrow's claim. (¶ 12.)

On May 29, 2018, Nguyen sent a letter to Tedrow's counsel, which stated, in relevant part, as follows:

> We have concerns as to causation based on Mr. Tedrow's activities prior to and post loss.[2] We also have concerns as to the mechanism of injury and subsequent treatment as the damage to both vehicles was very minor.
>
> Based on our review of the information provided, we ask that you provide us with complete medical records and employment history for five years prior to the motor vehicle accident. . . .
>
> I look forward to speaking with you in greater detail about this claim and the information needed to finalize our evaluation.

(ECF No. 17-2 at 2; *see also* ¶ 13.) Attached to the letter was a blank medical release

---

[2] According to the letter, Tedrow began receiving chiropractic treatment on December 14, 2016, which was two days after the accident. (ECF No. 17-2 at 2.) On February 8, 2017, Tedrow had reported "great improvement," with "[c]ervical, thoracic and lumbar range of motion . . . within normal limits without pain and . . . minimal to no right arm pain." (*Id*. (emphasis omitted).) The letter alleges, however, that Tedrow "took a trip to San Francisco around February 17th and reported being progressively worse following his trip." (*Id*.) The letter also appears to suggest that Tedrow may have aggravated his injuries during an excursion to Colorado's Western Slope in May 2017 or during a subsequent trip in June 2017. (*Id*.; *see also* ECF No. 17-5.)

form and an accompanying cover letter. (ECF No. 17-2 at 4–7.) In the cover letter, Nguyen stated: "In order for us to proceed with handling this claim, we need you to complete and return the enclosed form[]. Please fill out the form[] carefully and completely . . . to avoid delaying this matter." (*Id*. at 4.)

On June 5, 2018, Tedrow returned the medical release form to Sentry. (ECF No. 17-3; *see also* ¶ 14.) On the form, Tedrow only provided his signature and left the rest of the document blank because he did not regularly visit medical professionals or have a primary care doctor, and the only treatment he could recall receiving was an appendectomy. (ECF No. 17-3 at 1–4.) Thus, Tedrow did not fill out the form so that Sentry could "obtain medical records from whomever [Sentry] wish[ed]." (ECF No. 17-3 at 1.)

On September 21, 2018, Nguyen sent a letter to Tedrow's counsel, which stated, in pertinent part, as follows:

> Based on the information provide[d], we have considered reasonable medical expenses of $7920. Thus, we do not find that there are any uncompensated losses outside of the $25,000 provided by the liability carrier. However, in an effort to resolve this matter, we will extend an offer of $1500 as full and final settlement of the underinsured motorist bodily injury claim.
>
> If we an unsuccessful in reaching a resolution, then we would request an independent medical examination ["IME"]. . . .
>
> Please call me upon receipt of this letter so that we can work together to resolve this claim on behalf of our insured, William Tedrow.

(ECF No. 17-5 at 1–2; *see also* ¶ 15.) In addition, Nguyen requested information concerning Tedrow's involvement in a separate motor vehicle accident that occurred in

April 2016. (ECF No. 17-5 at 1.)

On October 8, 2018, Tedrow's counsel requested further explanation from Nguyen concerning Sentry's evaluation of Tedrow's medical expenses. (ECF No. 17-6; *see also* ¶ 16.) On October 29, 2018, Nguyen responded by reiterating Sentry's finding that, based on the information provided, Tedrow had been fully compensated by the driver-at-fault's liability carrier. (ECF No. 17-7; *see also* ¶ 17.) Nguyen then stated that Sentry believed that the parties should be able "to reach a reasonable settlement." (ECF No. 17-7 at 2.) Nguyen then offered to pay $1,500 to settle the claim, noting: "If we are unsuccessful in reaching a resolution, then we would request an independent medical examination." (*Id*.) In addition, Nguyen renewed her request for information concerning Tedrow's involvement in a prior motor vehicle accident. (*Id*. at 1.)

On February 5, 2019, Tedrow brought an action against Sentry in Boulder County District Court. (ECF No. 1-1.) On March 7, 2019, Sentry removed the action to this Court on the basis of diversity jurisdiction, *see* 28 U.S.C. § 1332(a). (ECF No. 1.)

On April 3, 2019, Sentry requested that Tedrow attend an IME scheduled for April 22 with Dr. Tashof Bernton. (ECF No. 17 at 4; ECF No. 18 at 4, ¶ 19.) The basis for the request was a provision in the Auto Policy, that states, in relevant part:

> Any person claiming any coverage under this policy must:
>
> (1) Cooperate and assist us in any matter regarding a claim or lawsuit. . . .
>
> (3) Submit to physical exams at our expense by doctors we select. This must be as often as we reasonably require. . . .
>
> Failure to perform or comply with any of these duties may result in the refusal of coverage, protection or a reduced loss payment.

(ECF No. 17-1 at 3 (emphasis omitted)).)

On April 5, 2019, Sentry informed Tedrow that Dr. Bernton was no longer available on April 22, and that the medical examination needed to be postponed until May 6. (ECF No. 17 at 4; *see also* ECF No. 17-8 at 2.) On April 10, 2019, Tedrow's counsel sent an e-mail to Sentry's counsel, objecting to the medical examination. (ECF No. 17-8 at 1; *see also* ECF No. 17 at 4.) In the e-mail, Tedrow's counsel stated that Sentry had already denied Tedrow's UIM claim on two different occasions without the benefit of an IME.[3] (ECF No. 17-8 at 1.) Tedrow's counsel then discussed how Colorado case law "stand[s] for the proposition that a UIM carrier . . . cannot come back later and force its insured to participate in a[n] [I]ME when coverage has already been denied." (*Id.*) Tedrow's counsel then warned: "If you persist in your request that Mr. Tedrow submit to an exam, we would like the judge to determine whether such an exam will be permitted." (*Id.*)

On April 15, 2019, Sentry's counsel sent a letter to Tedrow's counsel, which stated, in pertinent part, as follows:

> Sentry has not denied your client's claim; Sentry has a disagreement with you over its value. . . . This is not a request for a Rule 35 examination. It is a demand under the contract for your client to attend an IME. He is obligated by the terms of this contract to cooperate and attend. This is not a request that must await a judge's approval.

(ECF No. 17-9 at 1.) On April 24, 2019, Tedrow filed the instant Motion, requesting the Court to enter an order prohibiting Sentry from requiring Tedrow to undergo an IME.

---

[3] According to Tedrow, Sentry denied his UIM claim on September 21 and again on October 29, 2018 when Nguyen offered to settle his claim for $1,500. (ECF No. 17-8 at 1; *see also* ECF Nos. 17-5 & 17-7.)

5

(ECF No. 17; *see also id*. at 6.) Sentry filed a response to the Motion ("Response"; ECF No. 18), to which Tedrow replied ("Reply"; ECF No. 19).

## II. ANALYSIS

### A. The Motion

In his Motion, Tedrow contends that the "purpose" of Colorado Revised Statute § 10-4-609 "is to ensure that a person injured by an uninsured motorist is compensated to the same extent as one injured by a motorist who is insured." (ECF No. 17 at 4.) Tedrow then argues that an "insurance policy that attempts to dilute, limit, or condition statutorily mandated coverage is void and invalid as against public policy," and that where "there is a conflict between an insurance policy and a statute, the statute controls." (*Id*. at 5.) Tedrow then claims that Sentry's attempt "to enforce a contractual provision allowing it unlimited examinations of a claimant even after denying his claim . . . not only violates Colorado law, but also attempts to condition statutorily mandated coverage required by C.R.S. § 10-4-609, and as such is invalid." (ECF No. 17 at 5.)

In its Response, Sentry asserts that Tedrow's argument that the IME provision is against public policy is unpersuasive because Tedrow "fails to provide any explanation as to how th[e] provision dilutes, limits or conditions statutorily mandated coverage." (ECF No. 18 at 5.) In support, Sentry discusses how "this same provision has been held valid and enforceable in Colorado." (*Id*. (citing *Jensen v. Am. Family Mut. Ins. Co.*, 683 P.2d 1212 (Colo. App. 1984); *Hansen v. State Farm Mut. Auto. Ins. Co.*, 936 P.2d 584 (Colo. App. 1996), *rev'd on other grounds*, 957 P.2d 1380 (Colo. 1998)).)

In his Reply, Tedrow does not provide any explanation as to how the IME

6

provision dilutes, limits or conditions statutorily mandated coverage. (*See* ECF No. 19.) Indeed, Tedrow does not make any argument in his Reply regarding how the IME provision is against public policy, and likely for good reason, as the only case law before the Court supports the proposition that the provision is valid and enforceable in Colorado.

Tedrow also appears to argue that Sentry should be prohibited from requiring him to undergo an IME because Sentry had already denied his UIM claim on two different occasions without the benefit of an IME. (ECF No. 17 at 1–2, 5–6; *see also* ECF No. 17-8 at 1.) In support, Tedrow discusses how "an insurer's decision to deny benefits to its insured must be evaluated based on the information before the insurer at the time of the decision." (ECF No. 17 at 5 (quoting *State Farm Mut. Auto. Ins. Co. v. Reyher*, 266 P.3d 383, 390 (Colo. 2011)).) Thus, Tedrow argues that Sentry should be prohibited from requiring him to undergo an IME because Sentry "is not entitled to create new evidence in order to try to support its earlier coverage decision," *i.e.*, its alleged earlier decision to deny Tedrow's claim on two separate instances. (ECF No. 17 at 5 (quoting *Schultz v. GEICO Cas. Co.*, 429 P.3d 844, 849 (Colo. 2018)).)

Central to Tedrow's arguments, and the applicability of *Reyher* and *Schultz*, is the finding that Sentry had denied Tedrow's UIM claim before it had requested him to undergo an IME. The record before the Court, however, firmly supports the finding that Sentry had not denied Tedrow's UIM claim when it requested him to submit to an IME. (*See* ECF Nos. 17-5, 17–7, 17-9.) The Court is aware that an insurance company could craftly tailor its correspondence with an insured to tacitly deny coverage without

7

expressly doing so. But in reviewing the correspondence between Sentry and Tedrow, the Court finds that the parties appeared to be in genuine negotiations, and that Sentry did not—implicitly or explicitly—deny Tedrow coverage. For these reasons, the Court will deny Tedrow's Motion.

**B.      Sentry's Request for an Order**

In its Response, Sentry requests that the Court enter an Order declaring that Sentry has a right to request a physical exam of Tedrow pursuant to the terms and conditions of the Auto Policy. (ECF No. 18 at 7.) Sentry's request, however, violates this District's Local Rules and the undersigned's Revised Practice Standards. *See* D.C.COLO.LCivR 7.1(d) ("A motion shall not be included in a response or reply to the original motion. A motion shall be filed as a separate document."); WJM Revised Practice Standard III.B ("All requests for the Court to take any action, make any type of ruling, or provide any type of relief must be contained in a **separate**, written motion. A request of this nature contained within a brief, . . . or other written filing does not fulfill this Practice Standard." (emphasis in original)).

Because Sentry's request was made in its Response and not in a separate motion, the Court will deny the request. (*See* ECF No. 18 at 7.) Nonetheless, the Court advises Tedrow that this Court's ruling in this Order is now law of the case, and Tedrow is expected to conduct himself in manner consistent with this Order.

## III.  CONCLUSION

For the reasons set forth above, Plaintiff William Tedrow's Motion for Determination of Enforceability of Contract Provision (ECF No. 17) is DENIED.

Dated this 3rd day of October, 2019.

BY THE COURT:

_____
William J. Martínez
United States District Judge